IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES G. ARNOLD, #306410          *
    Plaintiff
    v.                            *  Civil Action No. DKC-10-283

CORRECTIONAL MEDICAL SERVICES,    *
  INC.
    Defendant.                    *
                                        ***

**MEMORANDUM OPINION**

Pending in this diversity/civil rights action[1] is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment and Plaintiff's Motion to Withdraw Complaint and Response.[2] Paper Nos. 8 & 13. The undersigned finds an oral hearing to be unnecessary. Local Rule 105.6 (D. Md. 2010). For the reasons set forth more fully below, the Complaint shall be dismissed.

**Background**

Plaintiff, an inmate currently confined at the Eastern Correctional Institution, claims that he was first diagnosed with a "serious medical condition"[3] in 1994 and has been confined in the Division of Correction since 2002. He contends that Defendant's corporate policy "negligently, carelessly, and unlawfully precludes his being treated." He raises a claim of medical malpractice,

---

[1] In his Complaint Plaintiff stated that "he intends to allege facts against defendant under theories of medical malpractice and *deliberate indifference*." (emphasis added) Paper No. 1 at 3. Therefore, the court generously construed the *pro se* "Complaint in Diversity of Citizenship" as also alleging a civil rights violation.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on May 10, 2010, the court notified Plaintiff that Defendant had filed a dispositive motion, he was entitled to file opposition materials, and his failure to file an opposition or to show a genuine dispute of material fact would result in the dismissal of his case. Paper No. 9. Plaintiff sought and was granted additional time to and including July 14, 2010, to file an opposition. On June 29, 2010, he filed a Motion to Withdraw his Complaint and Response. Paper No. 13.

[3] In light of the record submitted to the court, Plaintiff is presumably referring to Hepatitis C

alleging that he was referred to a physician for biopsy evaluation in March of 2009, but no evaluation, biopsy, or treatment was provided. He contends that the unspecified corporate policy has caused him harm since 2002, and has caused further "progression" of his medical condition. Paper No. 1.

## Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide

---

("HCV") as his "serious medical condition."

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

Civil Rights Claim

In order to state an Eighth Amendment constitutional claim for denial of medical care, Plaintiff must demonstrate that Defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level. *See Estelle*, 429 U.S. at 106;

3

*Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health care, 'the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)). "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

Defendant's dispositive motion is supported with the affidavit of Dr. Suresh Menon and Plaintiff's medical records. Paper No. 8 at Exs. A & B. In his affidavit, Dr. Menon explains that Plaintiff has a history of Hepatitis C ("HCV"), diet-controlled diabetes mellitus, and gastroespohageal reflux disease ("GERD"). Defendant states that Plaintiff's HCV is routinely monitored by testing his liver function or alanine transaminase ("ALT") levels. As of June 13, 2007, his ALT level was within normal limits, or less than 40 u/L. On August 4, 2008, Plaintiff was taken to Washington County Hospital ("WCH") for emergency evaluation in a state of respiratory distress after exhibiting symptoms of a drug overdose. The WCH record shows that Plaintiff was

4

given Narcan[4] at the prison and his urine screen tested positive for opiates. Paper No. 8, Exs. A & B. On August 11, 2008, Plaintiff's blood tests showed an increased ALT level of 42 u/L and a high HCV viral load. Defendant states that Plaintiff was not eligible for anti-viral therapy under the Department of Public Safety and Correctional Services ("DPSCS") policy for the management of HCV because of his use of illicit drugs within the previous one-year period. *Id*. Healthcare staff continued to monitor Plaintiff's HCV status in November of 2008 and February 2009 through ALT level testing. His ALT levels slightly increased on both occasions (57 u/L and 62 u/L).

On March 13, 2009, Dr. Ava Joubert evaluated Plaintiff in the Chronic Care Clinic ("CCC"). She noted that the only physical symptoms Plaintiff complained about which were attributable to the HCV were nausea and weight gain. Dr. Joubert found Plaintiff well-nourished and in no apparent distress, but she nonetheless referred him to Dr. Rafael, the DPSCS Infectious Disease ("ID") specialist, for evaluation of a liver biopsy. *Id*.

On July 6, 2009, Plaintiff again tested positive for opiates. On September 14, 2009, Dr. Wenelisa Navarro evaluated Plaintiff in the CCC. She observed that Plaintiff had HCV for more than fifteen years with no symptoms except for elevated ALT levels. She further noted that Plaintiff was awaiting a referral to the ID for a decision regarding a liver biopsy and possible treatment options. On December 16, 2009, Plaintiff was evaluated by Dr. Menon who noted that: (1) Plaintiff had approximately two years left on his sentence; (2) he would repeat Plaintiff's HCV viral load test; and (3) if Plaintiff was eligible for HCV therapy he would initiate the protocol. Defendant notes that the DPSCS HCV protocol in effect at that time had the same eligibility criteria concerning the

---

[4] Narcan is indicated for the partial reversal of opioid depression, including respiratory depression, induced by natural and synthetic opioids. It is also indicated for diagnosis of suspected or known acute opioid overdose. *Physician's Desk Reference* 1109-1111 (60th Ed. 2006).

absence of illicit drug use for at least one year. In addition, for an inmate who is genotype 1,[5] such as Plaintiff, the protocol requires that the inmate have at least 24 months left on his sentence in order to complete the entire course of medication. *Id*.

On January 19, 2010, Plaintiff's ALT level had decreased to 41 u/L, but his HCV viral load remained elevated. On March 12, 2010, Plaintiff told Physician's Assistant ("P.A.") Kevin McDonald that he had less than one year left on his sentence. Paper No. 8, Exs. A & B. P.A. McDonald noted that Plaintiff was not a primary candidate for HCV treatment at that time because of the shortness of his sentence and because his ALT level was less than twice the upper level of normal. McDonald observed that Plaintiff would continue to be followed in the CCC for his diabetes, HCV, and elevated triglyceride levels. *Id*.

In response, Plaintiff claims that it was not his intention to file a 42 U.S.C. § 1983 civil rights case, but to seek relief for damages in tort pursuant to the court's diversity jurisdiction. Paper No. 13. The court duly notes Plaintiff's position but finds, in any event, that no Eighth Amendment violation has been demonstrated. The record shows that Plaintiff was diagnosed with HCV in the 1990s. While confined he has been evaluated by P.A.s and physicians for HCV and has had his blood ALT and viral loads routinely tested. No objective health problems attributable to his HCV have been noted except for nausea and weight gain. Plaintiff's ALT levels have only been found to be moderately elevated. He has been deemed ineligible for the DPSCS HCV treatment policy due to his drug use and because the limited time left on his sentence precludes him from completing the protocol regimen. The court finds no showing of deliberate indifference with regard to his HCV

---

[5] According to Defendant, a genotype is the genetic make-up of an organism. In this case, it would refer to the genetic make-up of Plaintiff's HCV.

treatment.

## Medical Malpractice

Insofar as Plaintiff alleges that his HCV treatment does not comport with accepted medical practice, the claim is one of medical malpractice. A medical malpractice claim is not transformed into a constitutional rights violation simply by virtue of Plaintiff's status as a prisoner. *See Russell*, 528 F.2d at 319. Liability for negligently inflicted harm is categorically beneath the threshold of a constitutional claim. Plaintiff originally filed this action as a medical negligence claim under the Court's diversity jurisdiction. As such, Plaintiff would be required to comply with the requirements of Maryland's Health Care Malpractice Claims Act ("HCMCA") prior to bringing a medical malpractice claim.

Defendant argues that the HCMCA precludes Plaintiff from filing his medical malpractice claim as he did not fully exhaust his claim before the Maryland Health Claims Alternative Dispute Resolution Office as a condition precedent to any judicial action. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02. This exhaustion requirement applies to claims of medical malpractice filed in federal courts. *See Davison v. Sinai Hospital of Baltimore, Inc.,* 462 F. Supp. 778, 779-81 (D. Md. 1978*)*; *see also Lewis v. Waletzky*, 576 F. Supp. 732, 736-387 (D. Md. 1978). Plaintiff does not refute this argument, but asks to withdraw the claim without prejudice so that he may exhaust it under the HCMCA.[6] The Motion to Withdraw shall be granted solely as to his medical malpractice claim.

## Conclusion

---

[6] Plaintiff's medical malpractice claim shall be dismissed without prejudice. *See, e.g. Octopi v. McGowan*, 294 Md. 83, 447 A.2d 860, 864-65 (Md. 1982) (holding that the condition precedent of exhaustion does not take away the subject matter jurisdiction of a state circuit court to hear and render judgments in cases

For the aforementioned reasons, Defendant's Motion to Dismiss or for Summary Judgment, treated as a motion for summary judgment, is granted as to any 42 U.S.C. § 1983 claims raised in the Complaint. Plaintiff's Motion to Withdraw is granted as to his 28 U.S.C. § 1332 claim sounding in tort. The diversity claim shall be dismissed without prejudice. A separate Order follows.

Date: ____7/19/2010_____          _____/s/_____
                                          DEBORAH K. CHASANOW
                                          United States District Judge

---

involving claims that fall within the Health Care Malpractice Claims Act).